Please rise, this time we'll call the court. I was a 32-year-old Christian who stayed in the White House. Session in honor of Justice William J. Bolton. Please be seated.  316-0046 Nationstar Mortgage LLC Appellant by Frank Andriano v. Kimberly Weissman and the Law Offices of Kimberly Weissman LLC Appellees by Karen DeGrant. Thank you. Mr. Andriano, good morning. Good morning members of the court, counsel. My name is Frank Andriano and I represent the appellant, Nationstar Mortgage. The opposing party is Ms. Kimberly Weissman. And this is a case that arises out of the mortgage foreclosure crisis which we had a little bit ago. And it's somewhat of a unique case. My client, Nationstar Mortgage, held a mortgage on a piece of property in Bolingbrook, Will County, Illinois. Nationstar obtained that mortgage by a transfer from a company called Saxon Mortgage. And Saxon bought the mortgage out of bankruptcy. What occurred was there were two mortgages at issue in this case. It was a first and a second. It was a $255,000 first mortgage, which my client held, and a $55,000 second mortgage, which a company by the name of Mortgage First eventually acquired. Mortgage First filed a mortgage foreclosure action in Will County, Illinois. And it did not name what was the predecessor of interest, Taylor Bean and Whitaker Mortgage. Taylor Bean and Whitaker Mortgage was the original lender, and Taylor Bean and Whitaker Mortgage went into bankruptcy. Mortgage First did not name Taylor Bean and Whitaker Mortgage and obtained a judgment of foreclosure and sale in Will County, Illinois on its $55,000 mortgage. Thereafter obtaining that judgment, they went and named Taylor Bean and Whitaker. By the time they named Taylor Bean and Whitaker and sought to amend their mortgage foreclosure, Taylor Bean and Whitaker had been shot. It had been in bankruptcy, and it was no longer in existence. That is where this matter took a turn. What occurred was... The matter took a turn when Taylor Bean wasn't named as a defendant initially. Right. Taylor Bean and Whitaker was not named as a... That is correct. And there's nothing that prevents a second mortgage holder from seeking a foreclosure. They're not legally obligated to name the first. It's just if you don't name the first, whoever buys it at the share of sale takes subject to that first mortgage. Then in October 2009, an order was entered which zeroed out or purported to adjudicate T.B. and W.'s mortgage to zero. And that's what brings us here today. T.B. and W. had not been... Can you repeat that? What date was that? I believe it was October 10, 2009 was the date that an order was entered zeroing out Taylor Bean and Whitaker's mortgage. Okay. My notes show that it was November of 2009, but I'll go back... Oh, right. No, no. I believe that you're... I'll go back through the record to make sure. I'll go back through the records to make sure. No, I believe you're right. And what happened, that's right, it was 2009. It was November 10, 2009. Right. I paused it. Don't remember... See, I'm erasing my memory because it's a memory incorporated. Right. Right. So in 2009, Mr. Goldstein appeared on behalf of Ms. Wiseman, presented an agreed order. Right. And that agreed order zeroed out Taylor Bean and Whitaker's mortgage. And that's in the 2008 foreclosure. Correct. And then in 2009, and then once that occurred... How does that happen? Taylor Bean wasn't even a named company. Right. Well, it happened because during the mortgage foreclosure crisis... I guess I don't want to divert you from that. No, and I can tell you exactly because I think that one of the issues is Mr. Goldstein and how this occurred and everything, when the mortgage foreclosure hit, the courts were swamped. Oh, I was then on the bench... Right. ...when Cadillac and Associates walked in with 40 foreclosure cases... Correct. ...and doesn't know one case from another. Correct. And the judges rely on the lawyers handing them orders and saying, this is agreed and this isn't agreed. And quite frankly, that was the normal course and scope of how things were actually adjudicated in the trial courts. Is it fair to say that the trial court on November 10, 2009 should have said, wait a minute here. You're presenting an agreement that Sachsen via Taylor Bean, and they're not even named as parties here. There's kind of a, there's a red flag here. I think that, I don't want to be overly harsh on the trial judge, simply because if you've been, been there, there's literally 300 cases on the court call. If you read the rules correctly and if you did it all by the rules, yes. And if you had 10, 15, 20, 30 cases on a call where the judge could open a file and look in and do all of that, yes. But as far as actually faulting the trial judge, unfortunately sometimes the sausage is made not in accordance with... Okay. All right. I do want you to get back to work. All right. Then what happened is that the sale went forward, a homeowner purchased. And by the time the bankruptcy court transferred everything out of bankruptcy, Sachsen became the mortgage holder. Sachsen filed a foreclosure in 2011. And in 2011, the order purporting to adjudicate Sachsen's rights was vacated. And I'm confused about that as well. There was a motion to quash the service and vacate the foreclosure. Was that motion filed in the 11 case rather than the 08 case? No. What was the date that the motion to vacate was filed in and what file was it filed in? The motion to vacate was filed in the underlying case. Which is the 08 case? Which is the 08 case, right. Because I've searched that record and I can't find it, but I'll go back through. I do have a minute entry from the 11 case showing the motion to dismiss and vacate was allowed. Right. And because these were related actions, the record got a little bit wonky on that. But Judge Siegel, who presided over the foreclosure action, did vacate the order which purported to adjudicate Taylor Bean and Whitaker and then subsequently Sachsen's mortgage. So that was vacated. Was there ever notice that everybody in the 08 case? Oh, the motion to vacate, yes. Everyone was given proper notice. And it was ultimately, that earlier order was ultimately vacated. Okay. Mr. Andriano. Yes. While you are clarifying. Yes. What was the relationship between Ms. Wiseman and Mr. Goldstein? I thought they were working together and then they ended up on opposite sides of an agreed order. No, what occurred was this. Mr. Goldstein is a friend of Ms. Wiseman's. Mr. Goldstein appeared and presented on her behalf the order which adjudicated or purported to adjudicate the first lien holder. The actual order is prepared and at the bottom it has Ms. Wiseman. She prepared it and he presented it. The transcript indicates that Mr. Goldstein said that he was stepping up on behalf of Sachsen Mortgage. The clerk's docket entry indicates that he was there for mortgage first. So there is a conflict between what the clerk wrote down and what the actual transcript shows. So from the judge's perspective, Mr. Goldstein was presenting an order that on behalf of Sachsen, which adjudicated Sachsen to zero. Sachsen had not been served. Sachsen had not appeared. So again, I don't have an explanation for that, but Mr. Goldstein, if you look at the record, Mr. Goldstein had appeared in the past on the matter for Ms. Wiseman and on behalf of mortgage first. What ultimately occurred was that the order which purported to adjudicate Sachsen's interest was vacated. Sachsen was then put back into the same position it would have enjoyed. But by this time, the house had been sold. Another gentleman, Mr. Saunders, had moved in. And Mr. Saunders, in the 11CH case, asserted a bone. Which is foreclosure initiated by nation-state. Correct, right, as the successor. And Mr. Saunders then asserted that he was a bona fide purchaser for value. Even though the prior mortgage, or the prior order had been vacated, the position of nation-state was you bought a house that was, where the second mortgage is meant to foreclose on but the first is not. He said, no, I reasonably relied on the prior court's order. That matter came up to this court and then I believe a different panel held that without proof of service, one couldn't rely on the particular court order. And ultimately found that the trial court's ruling that Mr. Saunders was a bona fide purchaser for value was incorrect. So that, whether Mr. Saunders was a bona fide purchaser, has been adjudicated and the Supreme Court denied certiorari on that, I believe, in January. So that's final now. Nation-state brought an action that brings us to here today against Ms. Weissel. Alleging fraud, interference with contract, and the abusive process. Two counts of that complaint still survive. Is that correct? One in five and we're here only discussing two, three, and four? Correct. Right. And there was three or four aliens given as to that and that's what brings us here today. The issue that, I think that there's many issues that are raised, but the one that is an issue I believe is the issue of statute of limitations. The issue of statute of limitations is when did the injury occur or accrue to Nation-Star? Our position is, and I believe it's a valid position, that the actual harm that Nation-Star suffered occurred on December 1st, 2014. And that's the date that Judge Thanos ruled that Mr. Saunders was a bona fide purchaser and that Nation-Star's mortgage interest could not attach to the residence. We believe that that's the date of the injury because once the order was vacated back in 2011, our client had its mortgage, it had its note, and it could proceed with its foreclosure. And although the order purporting to adjudicate the interest of Nation-Star was kind of irksome, unfortunate, and should not have occurred, that situation was rectified and our clients were placed in a position where they could move forward with what? With securing payment in the mortgage and they could go forward. Counsel, it's two minutes. And the date of the injury we believe is the 14th. And that's the date that Judge Thanos ruled our mortgage could no longer attach to the property. The 14th of what? I'm sorry, 12-1-14. And we promptly brought suit and we believe that we have quite a cognizable cause of action. And quite frankly, stating to a court and presenting an agreed order that purports to adjudicate someone's interest when they haven't been served, they're not there, they're in bankruptcy, and you've adjudicated someone's interest to zero, when they have a valid security lien, we believe is a tortious act and one that ultimately resulted in Nation-Star incurring a harm and suffering a harm. That harm has since been somewhat mitigated by this court's ruling, but the intervening time between the 14th and the reversal of that decision, we believe, bests our client with a cognizable cause of action. And we believe that the trial court incorrectly ruled that the statute of limitations ran from an earlier date. Why couldn't the economic damages that you suffered between December 1st of 2014 and September 22nd, 2016, when Justice Schmitt issued his opinion, order that was unpublished in this case, why couldn't those economic damages just be added to the deficiency judgment? And why isn't your injury issue right now rendered moot by Justice Schmitt's holding in your favor? Well, I certainly think the damages have been militated, but the reason I don't think it can be properly added to the deficiency is that the homeowners certainly will, and we haven't gotten there yet, could certainly appear in a state judge. You know, you may be entitled to a deficiency, but the deficiency judgment and the delay in the process certainly can't be ascribed to any misconduct actions on behalf of us as homeowners. And so if there is a deficiency... Which homeowner are you referring to? The original borrowers. Not Mr. Sanders. Not Mr. Saunders, the Huffs. The Huffs were the original borrowers could certainly say, well, that is an inequitable result because of what occurred between the lawyers and the rulings and everything else. You're taking on additional, these additional costs for something that we haven't done. We vacated the property years ago. Am I correct that the Huffs declared bankruptcy instead of being declared bankruptcy? I don't believe the Huffs did. I don't recall getting... If they did, it was before I was involved in the case. And again, I'll check it over. Yeah, I don't recall that, but it's possible that they did, but before I became involved. So your position on the mootness issue is? My position is it doesn't become moot. It simply lessens the amount of the damage. Because you're arguing it's the injury that gives rise to the statute of limitations. Right. The injury, the actual harm is when my client loses its mortgage security interest. Has your client lost its mortgage security interest as of today? As of today, they have not. They have been reestablished, and the Supreme Court has denied cert as of today. And I looked at the docket entry in the 11 case. I think you've got a status set this week on that case. Yeah, that's somebody else's. So nothing has happened since you got the decision in September to proceed or go forward on the mortgage foreclosure. Yeah, I'm not the trial attorney in that one anymore, Justice. So I'd have to check the record on that. I appreciate you letting me pierce your brain for this issue. All right, thank you. Any other questions? Thank you. Thank you. Ms. DeGrand, good morning. Good morning, Your Honors. Good morning. Karen DeGrand on behalf of the defendant appellees, Kimberly J. Weissman and law offices of Kimberly J. Weissman LLC. May it please the court and counsel. Justice Wright, like you, I had to make a cheat sheet of the dates and the sequences going through the record. I think it became even maybe a little bit more convoluted because we have several underlying actions. Two separate foreclosure actions. Correct. Filed by different plaintiffs against different defendants. Correct. So you do need to check. You do. But I'd like to correct a few statements that counsel made. Perhaps first and foremost was counsel began his argument by stating that the predecessors for Nation Star stand in the first position. And that certainly has never been adjudicated. In fact, the record suggests that that's not correct at all. And that Fifth Third, the predecessor of Mortgage First, stood in the first position. And we dropped a footnote, I think it's footnote four in our brief that explains that and explains where that is in the record. Fifth Third filed its first. They were first to record. And so our position was, and again it hasn't been adjudicated, that they stood in the first position. And that is supported at C69 to 70 of the record, paragraphs 11 and 12 of the title commitment. So I wanted to clear that up. And there's another point that I think is important to clear up. And that is there actually was an amended complaint naming Taylor, Bean, Taylor, Bean, and Saxon. So in the 08 file. And that was filed on, let's see, amended complaint was filed September 22, 2009. And there's also a fair amount of discussion in the transcripts in the 08 case. Some of which appear in this case that go into sort of the history of what happened. You know, was there service on Taylor, Bean? My client took the position yes there was. Was there service on Saxon? My client took the position yes there was. Although then it appeared that that occurred before Saxon had an interest. So that's... They're backing up to that. I mean, they were granted leave to add TVW on September 22. But it said by that time they'd already ceased operations and had filed for federal bankruptcy protection. So then on the 20th of October, Mortgage First filed a motion to amend the judgment to add Saxon. And it said that it alleged the motion says that Saxon had been served on October 8. But it doesn't say the court record says that a summons had been issued to TVW mortgage. But none had been issued to Saxon. Well, here's my take on all of that, Your Honor. First of all, you'll see at C-76 of the record that the stay was lifted non-pro-tunk as to Taylor Bean back to August 24, 2009. And there are... I can't speak to how complete or incomplete either the 08 or the 11 court record is. But my client, in arguing this case, and there's a report of proceedings that set out her explanation of all that had occurred on service, in fact took the position and explained to the court her position that Taylor Bean had been served. And although there was a bankruptcy filing and other issues with Taylor Bean, that all this had occurred and she explained it. But without... The court doesn't have to resolve that issue because I'd like to take a step back and go to our defenses. And I believe that is quite clear. And I think that Judge... Before you go that far, I'd just ask you a question. Certainly. How could Saxon be added as a party when they didn't get the assignment until 2011? They probably couldn't have been, Your Honor. They were added in 09 as a party. That's right. As part of the amended complaint. Right. I admit in the record. Right. So they did not have an interest by assigning it. They didn't, Your Honor. And in looking and trying to piece together all of these dates, I found two different dates that were set out in the record on when the Saxon assignment was made. And one was September 25th of 2010. And one was January 1st of 2011. So there's a discrepancy there. Which happens very, very frequently in these high volume foreclosures. Well, that's probably a fact, Your Honor. It's foreclosure by a secretary. Well... People are preparing these documents. I'll let you go. I agree, Your Honor. So there is some confusion. And I just want to bring to the Court's attention that I worked through the same amount of confusion in trying to get these dates down. So a motion to dismiss based on different grounds, standing and statute of limitations, was filed. Yes. And you allege the statute of limitations was two years. Correct. What was Nation Star's position? Two years. Nation Star conceded in the trial court that it was a two-year statute. And Nation Star took the position that it wasn't injured until after the BFP filing in 2014. How do you address the new argument that it's a five-year statute of limitations? Well, it's waived, Your Honor. It's forfeited. But even if the Court looked beyond the forfeiture, it seems to me very clear under the Evanston insurance case that the Supreme Court recently decided that it's a two-year statute of limitations. And here's the two points that the Supreme Court cleared up that were, I think there was somewhat of a split in the districts. One is the party bringing the action need not be a client for 214.3 to apply. Absolutely clear. Second, the action need not be a legal malpractice or even a negligence claim. It's absolutely clear. And the language of the statute is very broad. The Supreme Court has read it, has said, yep, you're right. And there are cases where there's fraud claims, there's cases brought by non-clients. And we cite a number of cases in our briefs. So it's certainly forfeited by Nation Star. But even if it weren't forfeited, I think that we easily get over that hurdle. So this case just boils down to when was the date of the injury? That's correct. And what is your position on that? I just want to answer one more question the Court raised, just in case this is important to the Court. Saunders' purchase was before the quash. I agree. And I noticed that counsel glossed over that. Okay. So I just want to make sure that that's clear for the Court. Okay. So now back to the injury. It seems to me that it can't reasonably deny that there was an injury that goes back. All right. We have the filing. This is one date we cannot dispute, and nobody disputes, and that the filing of the case against my client is December 29, 2014. So now we back up to two years before that. And at that point in time, and that is December 29, 2012, do we have an injury and does the opposing party or the plaintiff have knowledge that it was wrongfully caused? And the plaintiff doesn't dispute that they had knowledge that their alleged injury allegedly was wrongfully caused. So let's look at injury. The injury doesn't have to be completed for the statute to accrue. There just has to be some injury, some damage, and it doesn't have to be a some certain at that point in time. So the fact that we go back to November 10, 2009, when Taylor Bean's interest was zeroed out. At that point in time, followed fairly closely by the sheriff's sale of the Colonel Moore property in November of that same year, 2009, and the foreclosure sale was approved by the court December 2009, Saunders purchased the property in September 2010. Now at this point in time, and sometime after, and we've already talked about the dates being somewhat unclear, Saxon takes the assignment and says, Holy smokes, we got sold a poor piece of paper here, because they discovered that their interest had been zeroed out. So now, and this is certainly before October 13, 2011, because that's when they went to court, they spend money to unwind this problem. When did they file their motion to dismiss or quash service and dismiss? I have two dates for you. Is it January 25th of 2011? No. I have, at least these dates, there's two different dates. There's, I think, a suggestion, and it may be in the Huff decision, that suggests it's March of 2011, and I found another date that said it's May of 2011. But in any event, they filed a motion to quash, and with the filing of the motion to quash, now we have injury. Well, certainly, even you go before that. The property is sold. How could they possibly not have injury? Their interest had zeroed out. How could they possibly not have injury? So using the latest date for the motion to quash filed by Saxon, why is that the date the statute of limitations began to run? Because they're definitely injured by then, Your Honor. But that's still May of 2011 plus two years, the statute of limitations would have expired in 13. Right. This lawsuit wasn't filed until 14. I don't think there's any way around it, Judge. I really and truly don't. And so that is our position, and I don't think that NationStar's position, if they're saying that there was no injury other than the BFP ruling, and that's vacated, you can't have it both ways. It's either that they had, you know, counsel said, well, it mitigated his injury. Yeah, mitigated it, and the kinds of damages that still existed besides the fact of the, you know, whatever the problem is with the property and they have to deal with the Saunders and so forth, it goes back to not, it goes back way before two years before they filed the action because they were already dealing with it. They were already having to file a motion to quash. That costs money. You know, their title was zeroed out. How could that possibly not be an injury, and that's what our position is on this. Do they have to exercise some degree of diligence before even accepting the assignment, or was this a package of bankruptcy cases? Well, that's why I'm going to assume that that's why we, you know, just out of an abundance of last possible, possible, possible day would be when they went into court and argued and got the ruling in front of Judge Segal. So the dates that we could look at would be the date of assignment, which we're not completely sure of, September 25th, 2010, or January 1st, 2011, or March of 11th for the motion, or May of 11th for the alternative date the motion was filed, but you are selecting the date last in the sequence being October 13th of 2011, and say even using the last possible date. That's right. That's right, Your Honor. And I'll even go way back to the point where the judge zeroes out the mortgage because the Illinois law is pretty darn clear. Now, once you have an adverse judgment, and that amended judgment of foreclosure was an adverse judgment, you are injured, and it doesn't make any difference if down the road that gets reversed or vacated or what have you. You are injured because there's a judgment against you. So I think you can go all the way back to then. But if you, you know, there's certainly absolutely dead vain last possible date would be October of 2011. Okay. Can you speak to the question I asked? Sir. Your colleague with respect to the impact of Justice Schmitt's order, and I wrote a dissent in that case about a vote by the purchaser. Right. Does Justice Schmitt's holding, and I think Justice Holtridge joined him in that case. He did. Does that make this issue of the statute of limitations move? Because if a statute doesn't start running until the date of injury, is it obliterated once the injury is erased by Justice Schmitt's decision? The way I view it, and I think this is accurate under the law, and that is it reduces the damages, but it doesn't eliminate them. So your position is it's not? It's not. Or alternatively, if it's counsel's position that there's no damages until there's a BFP ruling, then it is moved and we win anyway because there's no damages. So you can't have it both ways. You can't say there's no damage leading up to and getting this judgment unwound and getting this problem unwound and then say, oh, but nothing happened until the BFP ruling. But in terms of stare decisis, you don't think the order written by Justice Schmitt and joined by Justice Holtridge makes the issue of the statute of limitations move? I don't think so, Your Honor, not on this record. I agree with that. And I know my time is just about up, but I think we have some other very sound, if the court has concerns about the statute of limitations, we have raised some very, very solid alternative grounds, the fact that the assignment didn't encompass any tort claims, and also the fact that there's no duty. What duty is there for opposing counsel's lawyer toward the opposing party? None. And we also have included in our brief the argument that this is just not on its face fraud, and, in fact, counsel and I should say NationStar has pleaded itself out of court by acknowledging that there was no intent by the person who supposedly misspoke to Mr. Goldstein. Yes, that there was no intent. And that's been candidly and decently admitted by counsel more than once, and we have those citations in our brief. And so no intent to deceive, there's no fraud. There's no reasonable reliance. I don't think there's any element of fraud. So that goes by the wayside. Now, in all of these alternative arguments, if I close with this, there's no reply brief responding to any of them. So I think, again, any kind of response is waived, and I would like to sort of stand up and object if counsel starts raising arguments and rebuttal on those. In the interest of developing a uniform body of law, I do have to note that there was not a cross-appeal on some of the standing issues that you're raising here today. That's correct. I do agree that there is no reply brief on the forfeiture argument you're making with regard to this new five-year statute limitation. Right. So I agree that based on the pleadings and the briefs in this case, that issue's been raised. May I say to the Court, however, I have to disagree with the Court about raising the issue of a cross-appeal because a cross-appeal is only filed if there is some aspect of the judgment that's adverse to the appellee. No aspect of this judgment was adverse. In the case law, I just had this in another case, which is why it pops into my head, material services out of the Illinois Supreme Court, 99 millisecond something, makes that point very clear. I appreciate that very much. We can raise this issue without. In the Inmate Veronica case out of the Illinois Supreme Court, we can raise this as an alternative basis for affirmance without a notice of cross-appeal. Thank you very much, Your Honors. We'd ask that the Court affirm the judgment. Thank you, Ms. DeGran. Mr. Andriano, any rebuttal? Yes, please. So can I pepper you before you do? Absolutely. Sure. Go ahead. Are you forfeiting or giving up the issue with regard to the five-year statute limitations because you didn't apply? If you're reviewing everything, I think it's probably the two-year statute. Okay. I appreciate that very much. And as far as some of the issues raised, the very first one, as far as Fifth Third being first, that issue wasn't adjudicated, and I think if you look at the underlying documents, the $255,000 mortgage and their $55,000 equity line of credit, they were all executed on the same day. And first in time is not necessarily first in writing. That would be something that would need to be adjudicated, whether a purchased money mortgage loses its position, and I don't believe that the law is that a purchased money mortgage loses its priority. But that's really not in front of us and in front of you today. What I would like to say, though, is as far as bringing the suit earlier, quite frankly, we're in somewhat of a catch-22 situation. If we bring the suit earlier, meaning right after the judgment is vacated or in 2011, as soon as we appear, the date we appear. Do you know what that date was? I think that they appeared in March. Okay. And Justice Schmitt's order refers to a date in March. I believe that they appeared in March, is my recollection of that underlying record. If they had brought it right in March, right then, as soon as the order is vacated, my client would be facing the same argument we'd be having here of, well, have you been harmed? And the argument of, well, you don't know how a judge is willing to rule in the future. So the fact that Mr. Saunders has a potential defense doesn't really mean anything. And when you say, if they brought it. I'm assuming that's misplaced. I apologize for that. That's okay. For not being articulate enough. My clerks like to listen to the arguments, and so this will help them digest it. But once we have an on-the-face ruling that Nation Star, its mortgage is now no good, on the merits, I think that we've had a damage, and that is a damage that they have suffered. And I think that that is the damage that we're seeking recompense for. And I think that my client's entitled to that. So I don't know if there's any other questions your honors have. I'd be more than happy to address them. And your position is that your client sustained no injury prior to December of 2014. Well, I don't know how to answer that because in this world that sometimes you're litigating things. The idea that a bank is spending money on legal fees is part of what they do. Meeting litigants in court is part of what they do. There was no ruling, at least how we saw it, on the merits at that point. Where we're concentrated on is when is it that we actually suffered a true injury. In other words, when can't we go forward with our foreclosure? That was fairly rapidly resolved. Not necessarily the injury. You're just saying the damages. The damages. The assessment of damages didn't occur until you got the ruling about Mr. Sonders being a bona fide purchaser. Right. And at that point in time, you have to remember that where we're at is that we've now had a mortgage. We have no mortgage interest according to a court. And my client then brought this suit. His last comment. So my client felt at that point that they're in a difficult spot of do we just walk away or what exactly do we do? And it was their view that the ruling adjudicating them to zero in 2014 did cause them injury. So you're arguing that if there are no damages, there is no injury? I think you would have to say that in order to have an injury, you have to have damages, Justice. I don't think that they can be hypothetical. So, yes, you would have to have damages which flow from a particular injury. And my client's view is that it was damaged when its mortgage was zeroed out by Judge Stannis in 2014. But you're standing in the shoes of Taylor Feene. Correct. Taylor Feene was damaged on November 10, 2009. But when their interest was zeroed out in Saxon's name, although the assignment hadn't occurred yet. Right. So the damage that happened on November 10, 2009 was cured with the motion to vacate that was allowed on October 15, 2011. Right. And it was fairly rapidly cured after my client appeared, I think within months. Right. And I understand what you're struggling with, Justice. You probably have the same struggle. I understand what you're struggling with is... Everybody wants to be understood. I understand. All right. Any other questions? Thank you. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel discussion. Thank you. Thank you. Court is adjourned.